We'll call our first case 22-2072, Santos v. Attorney General of the United States. Ms. Koppel, how are you? Good, how are you? Good to see you. Good morning, Your Honors, and may it please the Court. Margaret Koppel, Pro Bono Counsel for Petitioner José Germán Santos. I would like to reserve three minutes for rebuttal. The categorical approach is difficult, but this case doesn't need to be. The Pennsylvania Superior Court stated in a precedential decision that, quote, the specific identity of a controlled substance is not an element of the offense, end quote, of possession with intent to deliver under Pennsylvania law. Is that the Beatty case? Yes, Your Honor. That case had to do with the sufficiency of evidence for a conviction of conspiracy to distribute a controlled substance. That's not what we have here. We have the application of the modified categorical approach in a federal situation, and we have Mathis, we have Abbott. Why are they not controlling? Mathis is controlling, of course, Your Honor, but Mathis says that we must pay attention to state law and that state law is the state courts are the ultimate arbiter of what are means and elements of state statutes. Is there any state content, any case that applies state law or pronounces and espouses state law in the context of a modified categorical approach? I don't know that state courts have much occasion to do so, but the sufficiency of the evidence standard that's used in Beatty does explicitly examine what did the prosecution need to prove beyond a reasonable doubt, and that is the definition of elements under Mathis. You're looking at elements very differently than the way we usually approach elements. You're not looking at elements as the individualized crime. You're looking at elements as the state, I hate to use the word category because it's confusing, but the state grouping, if you will, the state grouping and how the state groups the crime, and I think that once you determine that a particular offense is within a grouping, that's all you need to do. And if that grouping is broader than the federal grouping, then basically you win. If it's not broad, I think both sides agree that it is broader here. But you're focusing on the grouping as opposed to the individualized crime. And the crime is only important because that sets our eye on the particular grouping that it falls in, and that grouping is what has to be proven beyond a reasonable doubt. And you're arguing that that's basically the change in the law. It's not a change in the law. You're arguing it's a clarification of the law in Pennsylvania insofar as how Pennsylvania views elements and how the federal system views elements. You're saying it's basically the same, just the focus is different. That's correct, Your Honor. And respectfully, I wouldn't say that I'm looking at elements differently than how this Court usually does. We're looking at what needs to be proven beyond a reasonable doubt, agreed upon unanimously by a jury, and together with that, what has the capability of increasing statutory punishment. And that's the definition of element that this Court uses. But doesn't DiMatteo compel us to say that these are different substances and they are elements because there is a different punishment meted out? And under Alain, therefore, it has to be proven beyond a reasonable doubt. So how do you get around DiMatteo? DiMatteo is the recent Pennsylvania Supreme Court case that struck down the mandatory minimum sentencing statute. Right. But it held that Alain is the law of the land. And if that's the case, then and the punishment changes depending upon which drug. Ergo, how can it not be that these are elements for purposes of our application of the modified categorical approach? The punishment only changes within the statutory subsections of F1 through 4. But doesn't the jury have to determine which drug was issued beyond a reasonable doubt? The jury has to determine that a drug fell into that statutory subsection, so that an F1 drug was involved or that an F2 drug was involved. But Beatty is the case, actually, it shows us exactly where the jury did not need to find that fentanyl was involved, and yet the conviction was sustained. So as long as a jury finds that the defendant was in possession with intent to deliver of a controlled substance within the relevant statutory subsection, that's all that's needed to convict under Pennsylvania law. But the issue of punishment wasn't before the Beatty court. Well, the issue of sufficiency of the evidence and what the jury needed to find beyond a reasonable doubt was. But there was no argument there that I could see specifically talking about, well, there's different punishment here. The court pretty much said in an offhand manner, and it affects who the defendant is. It's a punishment, but, you know, we kind of don't care. Well, it wasn't really presented. It was just as a combined drug case, was it not? It was. Doesn't that make a difference? I don't believe so, Your Honor, because the government has never explained why, in a combined drug case, the government would be relieved of its burden. The Commonwealth would be relieved of its burden to prove every element beyond a reasonable doubt. The government leans heavily on, I think it's Swavely, right? How do you distinguish your situation from Swavely? I believe that Beatty clarified Swavely. I think that our, as we explained in the reply brief, our reading of the penalty subsections comports with Swavely. We've never said that Beatty overturned it. Swavely was written in 1989, obviously pre-Apprendi and pre-Elaine, and uses the terms substance type and schedule interchangeably. And that made sense at the time because there were statutes like the mandatory minimum sentencing statute that allowed for increased punishment without the jury needing to find something beyond a reasonable doubt. That changed then in the next 30 years. And so Beatty then clarified that it's penalty subsection that has the capacity to increase punishment, not substance type. Our reading allows this Court to give the proper deference both to Swavely and to Beatty and to all the other cases. The government's reading says you need to ignore Beatty because they didn't use the word element in the way, in the Federal sense of the word, with no explanation as to why that is. And they also cannot explain the case that we submitted as a 28-J letter, Jackson. They said Jackson is distinct from Swavely and the Court doesn't explain why. And that's it. Our reading allows this Court to actually give deference and pay attention to every Pennsylvania Superior Court decision, whereas the government requires this Court to ignore several. So, but your basis for saying that Abbott is no longer good law is Beatty. Is that correct? I believe that it's, yeah, Beatty would be the most recent case that certainly clarified the change in law that has happened. And Abbott was good law in that it was relying on the only Superior Court case that existed at the time, which was Swavely. But this Court now has the benefit of other intervening cases, including DiMatteo and Beatty and Jackson and the other Superior Court cases, Ramsey, the other cases we've cited too. But I keep getting back to Allain. If Allain controls here and if the difference in punishment matters and therefore has to be proven by a jury beyond a reasonable doubt, then that translates into element. I don't believe it does, Your Honor, because as long as a jury finds that the defendant possessed a controlled substance within the relevant subsection, that's all that's needed to increase punishment. There are no mandatory minimum statutes in Pennsylvania, sorry, Your Honor, that increase by subsection. The element here is the subsection, not the things contained within that subsection. Exactly. Those are means, Your Honor. And, you know, it's very similar to what this Court has held in recent categorical approach cases, including United States v. Aviles and Hillex v. Attorney General, where the Court said that the elements need to be found directly within the text of the statute. And in Hillex, the Court explicitly said that where punishment has not been – where the statutory provision of the same punishment, regardless of which alternative was involved in a crime, could indicate that the alternatives are means. And that's the case here. Within F-1, a defendant's mandatory punishment does not change. Let's assume, hypothetically, we agree with you. Where do we go next? The next step would be for this Court to revisit its previous decisions and to hold that they are abrogated in light of Batey and to hold that – Can we do that? Yes. And this Court has recently – sorry, one moment. This Court has, you know, done so many times – Actually, I'm in a panel. Can a panel do that? Yes. A panel can do it, and panels have done it in considering intervening – at least intervening superior court law. In Robinson v. Jiffy Executive Limousine Company, the Court stated that though the previous attempts to predict accurately a pronouncement of the State Supreme Court may have been reasonable at the time, the Court now had the benefit of two intermediate State appellate decisions directly on point that undermined the prior judgment and used that to revisit a decision. And then a similar situation arose recently in Earle v. NVR, which Your Honor wrote, which, again, looked at intervening law, saw that a Pennsylvania Supreme Court case had indicated a change that had happened, and that's what I would say DiMatteo was. And then a State Superior Court decision made the holding much more explicit, and this Court said that that was enough to abrogate, revisit prior decisions. The Court did not need to go on bonk in either of those cases. And in some of the cases, including Robinson, the prior Third Circuit decision had been based on a State Supreme Court decision, and then it was abrogated by intervening State Superior Court decisions. So that's even a higher bar than what we have right now, because Swabley is Superior Court and so is Beattie. If we had a situation, some of the confusion here may emanate from the fact that we have the mixed compound. It was fentanyl and heroin, it was the same subgrouping. Would it be clearer if someone sold a compound that was composed not of fentanyl and heroin, but I don't know, with element, because there the Court would have to instruct you have to find not the specific drug, but the particular grouping. And that would depend on, it would make it clearer, because you wouldn't have the same two drugs, both within the same subsection. That's, I think, what's confusing here. Right. I understand that. And that's why, you know, as a practical matter, does this arise very often in convictions where a jury can't decide about which of two substances was possessed? No. But that's not the question for this Court to consider. The question is a legal one under Mullooly. What is necessarily required to sustain a conviction? And I would say if this Court is going to wait for a case like that to arise or for a case to get to the Pennsylvania Supreme Court, it's going to be waiting a very long time, because the Pennsylvania Supreme Court denied review in Beattie and in Ramsey, indicating that has no problem with the holdings there. And, again, because this just doesn't arise in practical circumstances that frequently. So I would say if this Court has any doubts and has any doubts about its ability to revisit prior precedent, that the Court should refer this case to the Supreme Court. It should certify a question to the Pennsylvania Supreme Court. I wish the Pennsylvania Supreme Court would take the certification. We don't have a good track record with them. Well, the Ninth Circuit recently did the same thing when analyzing an Arizona-controlled substance statute. That was Romero-Millan v. Barr. And the Court acknowledged that in this context it's mostly a federal concern, but that Arizona had an interest in this case because of the potential impact on state cases. And the Court did answer the question. This Court, of course, recently did the same in U.S. v. Harris. The Court can do so on its own, sua sponte. And, again, if there are any doubts, I believe that that's what this Court should do. I see that my time is up. I'm happy to answer other questions. Okay. Thank you. Good morning. Good morning, Your Honors. May it please the Court, my name is Rebecca Nahas, and I'm representing the United States Attorney General. This Court should affirm the agency's conclusion that there hasn't been a change in state law to warrant a departure from this Court's longstanding precedent, holding that the conviction statute in this case is divisible by drug type. And I think it's really important to go to Ms. Koppel's argument. Why isn't it divisible by categorization and not drug type? It doesn't really matter what the identity of the specific drug is. The judge has to, for purposes of sentencing, and the jury has to, for purposes of proving without conviction, determine what the subgrouping of whatever the person possessed is. So in the mixed compound case, it doesn't matter whether it's fentanyl or heroin because it's in the same subcategory. But what if it was fentanyl and something else? Whatever's in cough syrup that makes cough syrup a bad thing, codeine, whatever that is. And let's assume it's in a different schedule. What if it was a compound that fell under F5 as opposed to F1? Wouldn't that make a difference? No, Your Honor, it wouldn't. And I have a couple of points. I want to start off by orienting the Court that it has already determined for a decade, at least four published decisions, that this statute is divisible. What is divisible? The question is, what is it that drives the division? It determined that it was divisible by drug type. And not by category? Correct, Your Honor. But what is the category that drives the punishment and not the drug? Excuse me, Your Honor? Why isn't it the subcategory that drives the punishment and not the drug? In the heroin and fentanyl example, for example, it doesn't matter whether it's heroin or fentanyl because it's in the same category, same subgrouping. But if heroin were in a different subgrouping, then it wouldn't matter that it was heroin. It wouldn't matter what subgrouping it was in. So why isn't the element for Pennsylvania purposes the subgrouping? And that's perfectly consistent with Alene and Apprendi. Sure, Your Honor. So a couple of points. First, the Court in Gale and Marsh, this Court, albeit in unpublished decisions, found that a New Jersey statute with an almost identical drug schedule and statutory structure was divisible by drug type rather than category. And like the Pennsylvania statute before the Court today, the New Jersey statute has a subprovision that sets out specific drugs and then a subdivision that sets out schedules and punishments that attach to each. And the Court determined that because, and I think, Your Honor, Judge Restrepo made this point, because the penalty is attached to the drug type by virtue of the sentencing structure. You're putting the rabbit in the hat there. You're saying the penalty is attached to the drug type by virtue of the sentencing structure, i.e. grouping. You could take out the middle of what you said and say that the penalty is attached to the grouping by way of the drug type. Well, Your Honor, as a practical matter, the State will have to present the drug at issue in order to place it within the sentencing structure, and it therefore has a legal effect or consequence under MAFIS and is therefore an element that the State must prove beyond a reasonable doubt. What if you had a situation where the chemist could not determine whether it was drug A or drug B? Drug A is in Pennsylvania, not New Jersey. Drug A is in one subcategory. Drug B is in the same category. And the chemist said, could be A, could be B. We don't have enough of a sample to run a test for me to be able to say to the level of mathematical certainty I'd have to say to tell you that that's what that drug is. But it's one or the other. It's either A or B. Wouldn't it matter, would it? Because the judge is going to tell the jury it doesn't matter whether it's A or B. You just have to find beyond a reasonable doubt that it's either A or B because they both have the same penalty. And you're arguing focus on the identity of the drug. But in that situation, it's not going to matter because the penalty is the same. Therefore, it's an element. Sorry, Your Honor. So I do think it would matter. I think that in Pennsylvania, a defendant in that scenario would be subject to two punishments. And I have support for that. First, we have Suavely. Suavely held that a defendant who is in possession of two drugs in a single act, a single sale of those two drugs, could be punished twice, and it wouldn't offend double jeopardy or the merger doctrine. Because it committed two crimes, is that right? Exactly. Because each drug is an element. And admittedly, in Suavely, as Petitioner points out, there were drugs in different schedules that aligned to different provisions. But I'll point out that we have Smith in 2013, Samad in 2021, and Sinanon in 2023 that applied this Suavely principle in cases where the defendant was in possession, and it was a single act, of two drugs that were on the same schedule. And the courts affirmed two punishments in that scenario. But I'm not sure that's the same thing. You're basically talking about merger there and whether or not he can be, or she can be punished for having both drug A and both drug B because they're both illegal. I don't see a problem there, but I'm not sure that answers the question here. I think that is the exact question that Mathis presents. Can you be convicted of multiple crimes for a single act? It's a single act of possession where there's different drugs. And if you can, under state law, that means that the state treats it as an element. What do we make of Beatty? The court clearly said, the Pennsylvania Superior Court, that the type of drug is not an element of the offense. Sure. So Beatty is distinguishable or reconcilable with Suavely for two reasons. The first is that Beatty, under Mathis, there is a meaning of element that's relevant for the court's inquiry. And so a state can label something an element or not an element, but that doesn't really answer the question. You have to dig deeper into what the state meant when it said that. And in Beatty, if you read it, it does – If the state means the same thing that we do when we say elements, then it answers the question, right? I think it has to mean element in the way that Mathis and federal law – The way the federal law means element. Exactly. And so – That's Allene and Apprendi. I'm sorry to keep interrupting. I'm just trying to – Sure. Get some understanding. I think I understand what you're arguing. But it's Allene and Apprendi that tell us what we mean by element. That's right. In this context, right. And in Pennsylvania, they're doing exactly the same thing, except their focus is different. They're not focusing on the identity of the drug. They're looking at where that drug is scheduled, if you will, or grouped for purposes of the outline of the statute, because that's what drives the punishment. And that tells the jury what it has to find beyond a reasonable doubt. I don't think that's true. The jury petitioner hasn't pointed to any case where the state has applied this statutory structure that way. And, in fact, I just – But that's exactly what Beatty says. So Beatty – so getting back to Beatty, it determined – it did say that controlled substance is not an element, but it was using it in a different context. And support for that is that it went on to say that the identity of the controlled substance remains relevant for purposes of grading and punishment. And that, under Apprendi, means that it's an element that the state must prove beyond a reasonable doubt. And I'll point to Your Honor Judge Rendell's point about DiMatteo. DiMatteo only invalidated the mandatory minimum statute. It did not invalidate the statute that we're talking about. And, therefore, necessarily, in order for this Pennsylvania statute to not be unconstitutional under INA and Apprendi, the state must treat the drug type as an element. Would it matter in Beatty if the two substances were in a different subsection? Because they were both classified – the treatment of Schedule I and II was the same. And one drug, heroin, was Schedule I. Fentanyl was Schedule II. And they were both, though, under the same subsection. So then the court says the fact that it was heroin with fentanyl, not solely heroin, is of no significance for purposes of establishing the elements of the statute. Would it have been different if they were heroin and, let's say, marijuana, which is not in the same sentencing subsection, if you will? No. So I think that my second point about Beatty was that it involved a compound or mixture, as Your Honor pointed out. And that's distinct. Suavely made that distinction. You know, 30 years ago, it said two separate drugs in a single act of possession can be punished twice. But a mixture or compound, the state is going to treat as one drug, and we're only going to punish it once. So that doesn't tell us anything about whether it's an element under state law because it's just one drug. So, and again, I want to point out the three, Smith, Samad, and Sinanan, those are three cases that have cited Suavely. The most recent in 2023 said Suavely continues to be good law. And in all three of those cases, the drugs were in the same schedule, and the court still allowed multiple punishments because the drugs were elements. In the same schedule. Correct. That's your best argument, I think. Yeah. Yeah, right there. Let's see. And I also just want to point out that Your Honors, or this court in Gale and Marsh, has recognized that a state can say this isn't an element, but that's not dispositive of whether it's an element for purposes of federal law. And those cases also determine that a schedule, or excuse me, a sentencing structure that sets out the punishment by schedule and separate drugs can be divisible by drug type. And I think it's also really important to remember, and I wanted to start off by reorienting the court. This court has already held in four published decisions that this statute is divisible. And in order to depart from that, of course that's binding precedent on this panel, and in order to depart from that, the petitioner would have to demonstrate a change in state law. And petitioner hasn't, and moreover, those cases, Abbott and Henderson, already looked at the statutory structure. It hasn't changed in the last decade. And it's already determined that it's divisible by drug type and not by schedule or category, as Judge McKee put it. And this is also consistent with SWABI in the First Circuit, which found a Rhode Island drug statute divisible even though it set out penalties based on specific drugs and then schedules. How about the Johnson case, the Tenth Circuit? So I think the Tenth Circuit's in the minority on this. Their statute's a little different in that it includes reference to schedules in the statute itself. Do you find it distinguishable or it's just not? I think they just got it wrong, Your Honor. I think that this court in Gale and Marsh got it right and in Abbott and Henderson with regard to this statute. As I mentioned, the First Circuit with regard to a similar Rhode Island statute, and then the Ninth Circuit in Romero-Millan, it's not an identical drug statute, but it determined that a sentencing guideline provision that allowed the state to impose something other than probation for a crime that involved methamphetamine, the court used that, applied a penalty, and said, okay, the statute is divisible by drug type. It didn't say it was divisible between meth and non-meth crimes. So we have the Ninth, this court, and the First Circuit, and I think that the Tenth got it wrong on that point. Let's see. Would Your Honors like me to address the discretion issue? If you think it worthwhile. Are there any other questions with regard to? You mean the police report? Yes, Your Honor. Okay. Let's see. And I guess I'll also mention that Ramsey is also distinguishable and consistent with Suavely because in that case it involved a compound or mixture of drugs. So again, it doesn't tell us anything about whether drug type is an element. So unless Your Honors have any other questions, the government asks that the court affirm the agency's decision. Thank you, Your Honors. Nothing else, thanks. Okay, thank you. Thank you. I have a few points I'd like to make. The first is regarding Suavely and the other cases that the government cited. In all of those cases, there were two subsections involved. So in Samad, we were talking about F-1 and F-2. In Synanon, we were also talking about F-1 and F-2. Smith was a case involving possession, and the possession statute does not line up with those statutory subsections, so that's opposite here. And moreover, all those cases are unpublished opinions, whereas our cases that we rely on are all published. If we ever followed certain judges' advice and not put facts in non-published opinions, we wouldn't have this problem. My colleagues insist on putting all these facts in non-presidential opinions, and then we find out that the non-presidential opinions are being cited to us as precedent. And yet they are helpful because they are all different subsections. Suavely as well involved two different subsections, and the entire discussion of Suavely talks about schedules. It lays out subsections F-1 through 4 in their completion and says, and look at how the Pennsylvania legislature decided to structure punishment, and that shows us that the legislature treats some drugs differently than others. It described its entire reasoning in terms of schedules and subsections. But Ms. Nasr's argument that in Pennsylvania, you can be punished separately for having both fentanyl and heroin both grouped the same seems to be her strongest argument. What is your response to that? Very often, as Your Honor noted, there are two acts. And the merger statute in Pennsylvania, and that's the other thing, all of the government's cases involve double jeopardy and merger, not sufficiency of the evidence. You're saying that only happens when there are two separate acts of distribution, not when there's one act of a single compound combining both heroin and fentanyl. Right, that would be true. But the merger statute states that merger only applies when there have been two acts, and it clarifies that there can be two acts within a single transaction, a single sale. So, suavely, two pills in one vial can still be multiple acts, and all of the elements are the same. I get back to my question about Elaine. How can it be that state law controls the meaning of an element when state courts, DiMatteo, have already acknowledged that the term element has the same meaning as the U.S. Supreme Court has given it? I'm sorry, I don't understand the question. DiMatteo said that Elaine controls, basically. So, basically saying state law isn't the most important when it comes to what an element is. It's the United States Supreme Court that decides what an element is. Sure. And as Ms. Nahas said, if state law was to use element in a way that seemed completely divorced from federal law, then the federal court does not need to give deference to that. We know that. You're saying Beatty does. You're saying that Beatty does command something totally different from what the U.S. Supreme Court says. I'm not, Your Honor. I'm sorry if I've communicated that incorrectly. Beatty's use of the word element is completely consistent with how the Supreme Court uses the word element. It's consistent with Mathis, with Elaine, with Apprendi. It's something that needs to be found beyond a reasonable doubt, proven beyond a reasonable doubt, and found unanimously by a jury. And in order for something, for a fact to increase punishment, it must meet those two requirements. And so it's our reading that actually aligns, that respects Pennsylvania law, and that shows that it is in line with Supreme Court precedent. You're saying that's why the grouping is the element, not the drug. Yes. Exactly, Your Honor. I see that my time is up. I did just want, can I make one quick point? Please. Of course. The fact that a jury would have to identify some sort of a drug to place it into a schedule or to place it into a subsection, that's the same in every single drug statute in every state in the country. And yet many of these statutes have been found to be non-divisible into drug type. And so, you know, the government points us to Gale, to a recent non-presidential decision regarding New Jersey law. I point us to Johnson v. Barr. I think that the Colorado statute is quite analogous. But, of course, it's ultimately a question of Pennsylvania state law. And Pennsylvania state law, if we actually respect all of the decisions here, only leads us to one outcome, and that is that a defendant can be found guilty without the jury finding beyond a reasonable doubt unanimously which substance was proved. Where are we if we don't agree with your view as to the impact of Beatty? That you don't believe that it's a persuasive change in the law? Yeah. Or a persuasive evidence of a change in the law? Then I guess you would uphold prior precedent. But I think that that would just not be appropriate given Beatty's specific statement that the specific identity of the controlled substance is not an element of the offense. And then laying out the subsection. For purposes of the conspiracy statute? For purposes of the PUID statute. And as well, you know, the court, the government relies on these combined substance cases, and yet it has no response to Jackson, the case we submitted as a 28-J letter, where there were multiple different substances and the person was charged with PUID narcotics. So this does not only arise in the combined substance context. Thank you very much. Thank you. Before you sit down, thank you and the Nationality Service Center for taking this case on a pro bono basis. It's greatly appreciated. Thank you, Your Honor. And me, it's Ms. Wiesner. Thanks. Yeah. Thanks to both counsel. We'll take this case under advisement. I'd ask that a transcript be prepared, and the cost would be on the government. Thank you.